IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF a Samsung Galaxy J3, Model: SM-J327U CURRENTLY LOCATED IN Alaska State Trooper evidence as Property #: P19021654 | Case No. 3:19-mj-00249-DMS |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Sarah L. Foreman, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1) I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property – a Samsung Galaxy J3, Model: SM-J327U that is currently in possession of the Alaska State Troopers and is identified as AST Property #: P19021654, and the extraction from that property of electronically stored information described in Attachment B.

2) I am a Special Agent for the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and have been so employed since October 2009. As a Special Agent for the Bureau of ATF, I have completed the Criminal Investigator Training Program at the Federal Law Enforcement Training Center in Glynco, Georgia and Special Agent Basic Training for the ATF. Additionally, I have a Master's Degree in Public Administration with emphasis on Criminal Justice.

3) This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

Page 1 of 12

JUN 2 8 2019

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

4) The property to be searched is identified as AST Property #: P19021654, a Samsung Galaxy J3, Model: SM-J327U telephone, hereinafter the "Device." The Device is currently located at the Alaska State Trooper Evidence Storage.

## PROBABLE CAUSE

1) Your affiant reviewed Kenai Police Department Case 1906-0043 and Alaska State Trooper Case AK19035752, regarding the seizure of the Device. A summary of the investigation is as follows:

   i. June 1, 2019 Kenai Police Department Officer Russell observed a maroon 1999 Dodge Stratus bearing Alaska license plate GFB478 speeding on the Kenia Spur Highway. This vehicle was registered to Alando MODESTE. Officer Russell conducted a traffic stop on the vehicle. MODESTE was the driver and sole passenger in the vehicle. During the contact Officer Russell observed MODESTE had two cell phones, one of which was open to a GPS mapping app. MODESTE identified an address in Anchorage as his residence.

   ii. MODESTE told Officer Russell that he had been trout fishing. He did not have a fishing license or any fishing gear except for a large salmon-style landing net and a pair of rubber boots, neither of which showed signs of recent use.

   iii. Officer Russell reviewed MODESTE's APSIN records, which showed that he was on supervised release through the U.S. Probation Office for Felon in Possession. Subsequent, a K9 indication on the vehicle, the vehicle was seized pending search warrant and MODESTE released.

   iv. MODESTE requested phone numbers from his phones in the vehicle. The first phone was a Samsung Galaxy J3, Model: SM-J327U phone **(P19021654)**. The second phone was a LG tracfone **(P19021653)** located in the center console, turned off. While Officer Russell was retrieving phone numbers for MODESTE, the LG device received a text message from a contact listed as "Scub.". The text

Page 2 of 12

JUN 2 8 2019

message asked "Hay buddy you close." MODESTE quickly dismissed the text message notification. After retrieving the phone numbers, Officer Russell placed the phones in airplane mode to prevent the destruction of any evidence.

v. The vehicle was impounded and secured in a garage bay at the Kenai Police Department.

vi. June 2, 2019 Alaska Magistrate Judge Fallon granted search warrant 3KN-19-00109SW for the search of the vehicle, limiting the search to evidence of drug possession.

vii. June 3, 2019 the warrant was executed on the vehicle. The searching officers discovered a Crown Royal bag containing a Ziploc bag, a rolled up rubber glove, and a large sum of money from the dash of the vehicle, behind the stereo. The Ziploc bag contained three smaller plastic bags that appeared to contain suspected controlled substances, including methamphetamine (approximately 46.6 grams), cocaine (approximately 6.9 grams), and heroin (approximately 21 grams). The cocaine and methamphetamine tested positive with a TruNarc. The rubber glove contained a Ziploc bag of marijuana. The money was determined to be $4,000 comprised of four separate $1,000 bundles. Behind the Crown Royal bag in the dash was a pistol, Smith & Wesson, Model: M&P 9 Shield, Cal: 9mm, Serial #: HDB3670, loaded with an extended magazine. A search of APSIN/NCIC revealed the firearm was reported stolen out of a vehicle in Anchorage in 2017. A third cell phone, a Samsung Model: SM-S357BL **(P19021655)** was located in the center console of the vehicle. A black duffle bag from the back seat contained Ziploc bags and a package of rubber bands that matched the rubber bands around the money.

viii. Following the search, law enforcement applied for a warrant authorizing the seizure of evidence of drug distribution and misconduct involving weapons. Alaska Magistrate Judge Smith granted this warrant under docket number 3AN-

19-01809SW on June 3. In issuing the warrant, Judge Smith expressly noted that it authorized the seizure, but not the search, of electronic storage devices.

ix. The three cell phones seized during the investigation as described above are currently in the custody of the Alaska State Troopers.

2) Your affiant reviewed MODESTE's criminal history and found the following:

**Felony convictions:**

| Case Number | Convicted Offense | Conviction Date | Court |
| --- | --- | --- | --- |
| 3AN-05-747CR | Manslaughter | 07/25/2005 | State of Alaska |
| 3:13-cr-13-TMB | Felon in Possession | 03/14/2014 | U.S. District of AK |

**Drug Convictions:**

| Case Number | Convicted Offense | Conviction Date | Court |
| --- | --- | --- | --- |
| 3AN-02-11319CR | Controlled Subs – 6 | 01/30/2003 | State of Alaska |

**Dismissed Drug Charges:**

| Case Number | Charging Offense | Arrest Date | Court |
| --- | --- | --- | --- |
| 3AN-03-6846CR | Controlled Subs – 4 | 07/02/2003 | State of Alaska |
| 3AN-04-5543CR | Controlled Subs – 3 | 06/21/2004 | State of Alaska |
| 3AN-11-4129CR | Controlled Subs – 3 | 06/30/2011 | State of Alaska |
| 3AN-13-1423CR | Controlled Subs – 3 | 05/06/2013 | State of Alaska |
| 3:11-cr-00061-RRB | Possession w/ Intent to Distribute | 06/27/2011 | U.S. District of AK |

3) Based upon my training and experience,

i. It is common for an individual with a large quantity of narcotics, especially various types, and the absence of use paraphernalia, to be acting as a distributor rather than a user of the substance.

ii. It is common for members of drug trafficking organizations transporting narcotics to take extra measures to conceal the narcotics, such as by utilizing hidden compartments.

iii. It is common for members of drug trafficking organizations to carry firearms for protection of their narcotics and/or their profits.

iv. It is common for members of drug trafficking organizations to engage in telephonic communications before, during and after drug transactions. Calls

Page 4 of 12

JUN 2 8 2019

and/or text messages are often made between the drug source of supply and the drug recipient, prior to departure of a drug courier and upon arrival of a drug courier at the destination. Once at the destination, it is common for the courier to contact the recipient, via the telephone. Records of such contacts, whether call logs or text messages, are frequently maintained in the cellular telephone's memory. These communications are therefore evidence of drug trafficking activity.

v. It is common for individuals involved in drug trafficking to use multiple cellular telephones to maintain contact with their associates. These individuals use multiple cellular telephones because cellular telephones are mobile and can be easily obtained with a different subscriber name. A different subscriber name and/or telephone number is often used by members of a drug trafficking organization to thwart law enforcement detection of their illicit drug trafficking activities. These different telephone numbers often have different subscriber names and/or are pre-paid cellular telephones where the subscriber is difficult to determine. Due to the fact that several different telephone numbers may be used, it is common for traffickers of controlled substances to maintain the names and telephone numbers of associates within the cellular telephone memory. These associate names and telephone numbers may be stored in historical call logs, text messaging history or within the contacts section of the cellular telephone. The contents of these logs can thus serve as evidence of drug trafficking activity, and can be used to identify individuals engaged in drug trafficking.

vi. It is common for members of drug trafficking organizations to take or cause to be taken, photographs and/or videos of themselves and their co-conspirators and associates. It is also common for members of drug trafficking organizations to take or cause to be taken, photographs and/or videos of themselves and/or their co-conspirators with controlled substances, large sums of money, guns and

expensive assets (i.e. jewelry, luxury cars). The aforementioned images are frequently maintained in the memory of cellular telephone devices. Devices such as smart cellular telephones often imprint each photo with the GPS coordinates where such photos are taken. Thus, it is possible to learn the location of stash houses and other evidence by analyzing a digital photo. These files can thus serve as evidence of drug trafficking and can be used to identify individuals engaged in drug trafficking activity.

vii. Certain cellular telephones have a feature which allow the subscriber or user of the device remote access to "wipe" or delete all the information if the device no longer in their possession whether it be because it is lost, stolen, or seized.

## TECHNICAL TERMS

4) Based on my training, and experience, I know cellular telephones often have capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, PDA, and to access the Internet. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

5) Based on my training and experience, I use the above technical terms to convey the following meanings:

   a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and

Page 6 of 12

storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another

location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.


JUN 2 8 2019

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

6) Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

7) There is probable cause to believe that things that were once stored on the Device may still be stored there, for at least the following reasons:

- Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

- Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

- Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is

Page **9** of **12**

typically required for that task. However, it is technically possible to delete this information.

- Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

8) *Forensic evidence.* As further described in Attachment A, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

- Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).
- Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.
- A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.
- The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

Page **10** of **12**

JUN 2 8 2019

- Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

9) *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

10) *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premise. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

Based upon the foregoing, your affiant submits this affidavit as probable cause to believe Alando MODESTE is in violation of Title 21 U.S.C. §841(a)(1) possession of a controlled substance with intent to distribute, Title 18 U.S.C. §922(g)(1) felon in possession of a firearm, and Title 18 U.S.C. § 924(c) possession of a firearm in furtherance of a federal drug trafficking crime, and is requesting a search warrant be granted authorizing the examination of the Device identified as a Samsung Galaxy J3, Model: SM-J327U that is currently in possession of the Alaska State Troopers and is identified as AST Property #: P19021654 to seek the items described in Attachment B.

Respectfully submitted,

_____
Sarah L. Foreman
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Subscribed and sworn to before me on June 24, 2019:

_____
UNITED STATES MAGISTRATE JUDGE